## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| **SEAN O'BRIEN and RANDALL** | § | |
| **MOORE, on Behalf of Themselves** | § | |
| **and on Behalf of All Others** | § | |
| **Similarly Situated,** | § | **CIVIL ACTION NO.**_____ |
| | § | |
| **Plaintiffs,** | § | |
| | § | **HON:**_____ |
| **V.** | § | |
| | § | |
| **BLUEOVAL SK, LLC,** | § | |
| | § | |
| **Defendant.** | | |

### PLAINTIFFS' CLASS ACTION AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

1.      Defendant BlueOval SK, LLC ("Defendant") required Plaintiffs Sean O'Brien and Randall Moore ("Plaintiffs") to work more than forty hours in a workweek but failed to pay them for all overtime wages due.  Defendant's conduct violates the Fair Labor Standards Act ("FLSA"), which requires non-exempt employees to be compensated for all hours in excess of forty in a workweek at one and one-half times their regular rates of pay. *See* 29 U.S.C. § 207(a).  On behalf of themselves and all other similarly situated employees, Plaintiffs bring this action as a collective action under the FLSA, 29 U.S.C. § 216(b).  Members of the collective action are referred to as the "FLSA Class Members."

2.      Defendant's conduct also violates Kentucky's wage and hour law ("KWHL"), KRS § 337.010 *et seq*. On behalf of themselves and all other similarly

1

situated employees, Plaintiffs bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23.  Members of the class action are referred to as the "Kentucky Class Members."   The FLSA Class Members and the Kentucky Class Members shall be collectively referred to as the "Class Members."

## SUBJECT MATTER JURISDICTION AND VENUE

3.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. §§ 207, 216(b).

4.    The Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant's principal place of business is in this District.

6.    Defendant's principal place of business is located at 1 American Road, Suite 120, Dearborn, MI 48126.

## PARTIES AND PERSONAL JURISDICTION

7.    Plaintiff Sean O'Brien is an individual residing in Kentucky.  Plaintiff's written consent to this action is attached hereto as Exhibit "A."

8.     Plaintiff Randall Moore is an individual residing in Kentucky. Plaintiff's written consent to this action is attached hereto as Exhibit "B."

9.     The FLSA Class Members are all current and former production operators and production technicians field technicians who were paid on an hourly rate basis by Defendant at any time during the three-year period before the filing of this Complaint to the present.

10.     The Kentucky Class Members are all current and former production operators and production technicians field technicians who were paid on an hourly rate basis by Defendant in Kentucky at any time during the three-year period before the filing of this Complaint to the present.

11.     The FLSA Class Members and the Kentucky Class Members shall be collectively referred to as the "Class Members."

12.     Defendant BlueOval SK, LLC is a limited liability company with its principal place of business in Michigan.  Said Defendant can be served with process by serving its registered agent, CT Corporation System at 40600 An Arbor Road E., Suite 201 Plymouth, MI 48170.

## **COVERAGE**

13.     At all material times, Defendant has been an employer within the meaning of 3(d) of the FLSA.  29 U.S.C. § 203(d).

14.     At all material times, Defendant has been an enterprise within the meaning of 3(r) of the FLSA.  29 U.S.C. § 203(r).

15.     At all material times, Defendant has been an enterprise or enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because Defendant has had and continues to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

16.     Furthermore, Defendant has an annual gross business volume of not less than $500,000.

17.     At all material times, Plaintiffs and the FLSA Class Members were employees who engaged in commerce or in the production of goods for commerce as required by 29 USC §§ 206-207.

## FACTS

18.     Defendant is a business that manufactures batteries for vehicles. Defendant's website states as follows: "At BlueOval SK, we will lead the transformation of the electric vehicle (EV) battery business through partnership (Joint Venture formed by Ford and SK On) to provide products and processes to increase our customers experience. As the future of BlueOval SK, you will help lead the battery revolution by working alongside our teams as we build the batteries required for electric vehicle business excellence." https://www.blueovalsk.com/kentucky, last visited September 11, 2025.

19.     To perform its services, Defendant utilizes manual laborers, known as production operators and production technicians, to build batteries.

20.     Defendant classifies production operators and production technicians as not exempt from overtime.

21.     Defendant pays its productions operators and production technicians on an hourly rate basis.

22.     Defendant operates manufacturing facilities in Kentucky and Tennessee.

23.     Plaintiff O'Brien worked for Defendant in Glendale, Kentucky as a production operator.  He worked in the module department. He worked from approximately October 2023 to July 2025.  He was paid on an hourly rate basis.  His hourly rate was approximately $25 per hour.  He was scheduled to work 40 hours each week.  His schedule was either a 5 day schedule at 8 hours per day or 4 days per week at 10 per day.  Although he was scheduled to work 40 hours per week, Plaintiff O'Brien regularly worked more than 40 hours each week for Defendant.

24.     Plaintiff Moore worked for Defendant in Glendale, Kentucky as a production technician.  He worked in the press and pre-charged department.  He worked from approximately April 2024 to June 2025.  He was paid on an hourly rate basis.  His hourly rate was approximately $24.50 per hour.  He was scheduled to work 40 hours each week.  His schedule was a 5 day schedule at 8 hours per day. Although he was scheduled to work 40 hours per week, Plaintiff Moore regularly worked more than 40 hours each week for Defendant.

25.     Defendant failed to pay Plaintiffs and the Class Members for all hours worked and as such, failed to pay for all overtime wages that are due.

26.     Plaintiffs and the Class Members were required to perform significant pre-shift work without pay.  Prior to the start of their shifts, Plaintiffs and the Class Members were required to gather and don personal protective equipment that was required by Defendant and necessary for the Plaintiffs and Class Members to perform their work for Defendant.  This personal protective equipment includes, but is not limited to, hard hats, boot and shoe covers, and vests.  The time it takes to gather and don the personal protective equipment was approximately 5 to 10 minutes per shift depending upon the number of other people waiting in line to gather the equipment.

27.     After gathering and donning this personal protective equipment, the Plaintiffs and Class Members walked to their workstations.  The time it takes to walk to the workstations was approximately 5 to 15 minutes each day, given the size of the manufacturing facility.

28.     After arriving at the workstations, Plaintiffs and the Class Members were required to perform additional pre-shift work.  Some of the tasks were to make sure that the production machines were working properly.

29.     After the pre-shift work was completed, the Plaintiffs and Class Members normally participated in a meeting to discuss the work to be performed.

6

30.     Despite performing significant pre-shift work, Plaintiffs and the Class Members were not paid until the start of their scheduled shifts.  Defendant's policy was to pay for scheduled time and not the actual time that was worked.  As a result of the policy of only paying for scheduled time rather than actual time worked, all overtime compensation due to the Plaintiffs and Class Members was not paid.

31.     Similarly, Defendant failed to pay for all post-shift work that was performed by Plaintiffs and the Class Members.  After completing their work for the day, the Plaintiffs and Class Members were required to return and take off the personal protective equipment.   The same activities that were described in paragraphs 26 and 27 were required to be performed in reverse.  This time was not paid by Defendant.  Again, Defendant's policy was to pay for scheduled time and not the actual time that was worked by the Plaintiffs and Class Members.

32.     Moreover, Defendant issued bonuses to the Plaintiffs and Class Members based upon certain attendance metrics.  However, these bonuses were not factored into the regular rate of pay for purposes of paying overtime.

33.     The bonuses should have been factored into the regular rate of pay because the bonuses were non-discretionary. 29 C.F.R. § 778.207.   Non-discretionary bonuses include those that are designed to encourage employees to work more steadily, rapidly, or efficiently. *Id*. Few bonuses are discretionary under the FLSA. *See* 29 C.F.R. 778.200; 778.208; 778.209.

34.     29 C.F.R. § 788.211 provides that if there is a prior agreement or notice in advance about the ability to earn the bonus, then the bonus is non-discretionary:

> In order for a bonus to qualify for exclusion as a discretionary bonus under section 7(e)(3)(a)the employer must retain discretion **both as to the fact of payment** and as to the **amount until a time quite close to the end of the period for which the bonus is paid**. The sum, if any, to be paid as a bonus is determined by the employer **without prior promise or agreement**. The employee has no contract right, express or implied, to any amount. If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it. **Thus, if an employer announces to his employees in January that he intends to pay them a bonus in June, he has thereby abandoned his discretion regarding the fact of payment by promising a bonus to his employees**.

29 C.F.R. § 788.211 (emphasis added).

35.     Bonuses that are intended to encourage the employee to work harder and serve as a reward for performance are non-discretionary bonuses.  In such situations, the bonuses should be included in the regular rate of pay. *See* 29 C.F.R. § 778.212(b) ("If it is measured by hours worked, production, or efficiency, the payment is geared to wages and hours during the bonus period and is no longer to be considered as in the nature of a gift.").  The federal regulations provide several examples of bonuses that must be included in the regular rate of pay:

> Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing employment until the time the payment is to be made and the like are in this category.  They must be included in the regular rate of pay.

29 C.F.R. § 778.211(c).

30     Here, the bonuses were non-discretionary because the Plaintiffs and Class Members were told in advance that they would receive the bonus if certain requirements were met. Further, the bonuses were designed to encourage the Plaintiffs and Class Members to work harder, to work longer, and to serve as reward for their performance. Again, by not including the bonuses in the regular rate of pay, Defendant's violated the law by paying overtime wages less than the amounts that are owed.

31     Furthermore, Defendant has a payroll policy of automatically deducting time from the pay of the Plaintiffs and Class Members for a so-called meal break.

32     Indeed, under Defendant's payroll policy, Defendants programmed its time tracking system to automatically deduct time from the pay of the Plaintiffs and Class Members for each shift they worked.

33     Defendant's policy is illegal.  If a meal period is used predominantly for the benefit of the employer, the entire meal period is compensable work time. *See Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 264 (5th Cir. 1998).  The Fifth Circuit in *Bernard* explained as follows:

> To be classified as a bona fide meal period, 29 C.F.R. § 785.19 provides that an employee "must be completely relieved from duty for the purpose of eating meals" during that period. When applying this test, courts have employed a "predominant benefit test". The critical question is whether the meal period is used predominantly or primarily for the benefit of the employer or for the benefit of the employee. The employer bears the burden to

9

show that meal time qualifies for this exception from
compensation.

*Id*. at 265.

34.    Defendant's automatic deduction policy is illegal because the meal
period was primarily for the benefit of Defendant.

35.    The Plaintiffs and Class Members were required to remain at the
manufacturing facilities to be on call to work even during the lunch periods.
Additionally, the Plaintiffs and Class Members were regularly interrupted during the
meal periods to answer questions from their supervisors about work, and to perform
other tasks.

36.    Even if the meal period was not primarily for the benefit of Defendants,
Defendant's policy is still illegal because it deducted time even when no
uninterrupted meal period was taken.  That is, when Plaintiffs and the Class Member
worked through their meal period, they still had time deducted for a meal break.
This policy is per se illegal as the Plaintiff and Class Members were entitled to
receive pay for all hours worked.

37.    Moreover, the law is clear that any period of break time that is less than
20 minutes, is compensable. *See* 29 C.F.R. § 785.18.  In other words, when workers
are only given a 15 minute meal period, that time period must by paid by the
employer.

10

38.     Given that Defendant interrupted the Plaintiffs and Class Members, they were not given a period of at least 20 minutes free from any work. Therefore, no deduction is permitted and Defendant violated the law by automatically deducting time from the pay of the Plaintiffs and Class Members.

39.     Plaintiffs and the Class Members are owed significant unpaid wages as a result of Defendant's illegal policies and practices as described in this complaint. When Plaintiffs worked more than 40 hours per week, they were not paid overtime wages at the rate of time and one half their regular rates of pay for all hours worked over 40 in a workweek as a result of Defendant's illegal pay policies and practices.

40.     The Class Members also worked similar schedules as the Plaintiffs.

41.     The Class Members were employed by Defendant and performed work similar to Plaintiff.

42.     Regardless of the location in which they worked, Plaintiffs and the Class Members were required to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

43.     At the end of each pay period, regardless of the location in which they worked, Plaintiffs and the Class Members received wages from Defendants that were determined by common systems and methods that Defendants selected and controlled.

44.     As noted earlier, Defendants paid Plaintiffs an hourly rate.

45.     Defendants paid the Class Members an hourly rate.

46.     Plaintiffs were classified by Defendant as not exempt from overtime.

47.     The Class Members were classified by Defendant as not exempt from overtime.

48.     Plaintiffs regularly worked over 40 hours each week.

49.     The Class Members regularly worked over 40 hours each week.

50.     The Class Members were production technicians and production operators.

51.     The Class Members performed similar duties as the Plaintiffs.

52.     The FLSA Class Members worked in Kentucky and Tennessee.

53.     Given that facts as described in this Complaint, Plaintiffs and the Class Members were denied overtime pay.

54.     No exemption applies to Plaintiffs or the Class Members.

55.     Defendant's method of paying Plaintiffs and the Class Members in violation of the FLSA and Kentucky law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Defendant knew the requirement to pay overtime to their employees, but intentionally and/or recklessly chose not to do so.  Accordingly, Defendant's violations were willful.

## COLLECTIVE ACTION ALLEGATIONS

56.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

57.     Plaintiffs have knowledge that the FLSA Class Members have also been denied overtime pay for hours worked over forty (40) hours per workweek as a result of Defendant's illegal pay policies.

58.     Other workers similarly situated to the Plaintiffs worked for Defendant but were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty (40) hours per workweek due to the same policies and practices that applied to Plaintiffs.

59.     Although Defendant permitted and/or required the FLSA Class Members to work in excess of forty (40) hours per workweek, Defendant has denied them full compensation for their hours worked over forty (40).

60.     The FLSA Class Members perform or have performed the same or similar work as Plaintiffs.

61.     The FLSA Class Members are not exempt from receiving overtime pay under the FLSA.

62.     As such, the FLSA Class Members are similar to Plaintiffs in terms of relevant job duties, pay structure, and/or the denial of overtime pay.

63.     Defendant's failure to pay overtime compensation at the rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the FLSA Class Members.

64.     The experiences of Plaintiffs, with respect to their pay, hours, and duties are typical of the experiences of FLSA Class Members.

65.     The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

66.     All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

67.     Although the exact amount of damages may vary among FLSA Class Members, the damages for FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts.  Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all FLSA Class Members.

68.     As such, the class of similarly situated workers is properly defined as follows:

> All current and former production operators and production technicians field technicians who were paid on an hourly rate basis by Defendant at any time during the three-year period before the filing of this Complaint to the present.

14

## CLASS ACTION ALLEGATIONS

69.     Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

70.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs, individually and on behalf of all other similarly situated employees, pursue claims for unpaid overtime under Kentucky law against Defendant.

71.     Plaintiffs seek class certification of the following class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All current and former production operators and production technicians field technicians who were paid on an hourly rate basis by Defendant at any time during the three-year period before the filing of this Complaint to the present**.**

72.     Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, seek relief on a class basis challenging Defendant's practice of failing to pay overtime wages under Kentucky law. As a result of Defendant's illegal pay policies and practices, Plaintiffs and the Kentucky Class Members were not paid at the rate of 1.5 times their regular rates of pay for all hours that they worked over 40 in a workweek.

73.     Defendant maintained common work, time, pay, pre-shift policies, post-shift policies, bonus policies, and meal break policies and procedures at its Kentucky facility during the relevant period.  As a result, Plaintiffs and the Kentucky

Class Members are similarly situated and have been regularly deprived of pay owed to them through common policies and practices that applied uniformly to them.

74.    Plaintiffs' state-law claims against Defendant satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action.

75.    **Numerosity**. The class satisfies the numerosity standard as it is believed to number over 250 class members.  Consequently, joinder of all class members in a single action is impracticable.  The data required to calculate the size of the class is within the sole control of Defendant.

76.    **Commonality**. There are common questions of law and fact common to the class that predominate over any questions affecting individual members.  The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

a.  Whether Defendants had a policy and practice of automatically deducting pay for meal breaks;

b.  Whether the meal periods were primarily for the benefit of Defendant or Plaintiffs and the Kentucky Class Members;

c.  Whether the bonus payments should be factored into the regular rates of pay of Plaintiffs and the Kentucky Class Members;

d.  Whether the pre-shift and post-shift equipment gathering, donning, and donning constitutes compensable time worked; and

e.  Whether Defendant had a policy of paying for scheduled time rather than for actual time worked.

77.  **Typicality**. Plaintiffs' claims are typical of those of the class because Plaintiffs' claims arise from the same course of conduct and legal theories as the claims of the prospective class members.  Like the Kentucky Class Members, the Plaintiffs worked for Defendant at its Kentucky manufacturing facility during the relevant time period. Like the Kentucky Class Members, the Plaintiffs were subject to the identical policies that deprived them of compensation for all hours worked and overtime wages for all hours worked. The other facts outlined above likewise apply equally to both the Plaintiffs and the Kentucky Class Members.

78.  **Adequacy**. Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class members they seek to represent.  The interests of the members of the class will be fairly and adequately protected by the Plaintiffs and the undersigned counsel, who has experience in employment class action lawsuits.

79.  **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even if every member of the class could afford to pursue individual litigation against a company the size of Defendant, doing so would unduly burden the court system.  Individual litigation of over 250 claims would magnify the delay and expense to all parties and flood the court system

with duplicative lawsuits. Prosecution of separate actions by individual members of the class would create risk of inconsistent and varying judicial results and establish incompatible standards of conduct for Defendant. A single class action can determine the rights of all class members in conformity with the interest of efficiency and judicial economy.

## COUNT ONE: FAILURE TO PAY OVERTIME UNDER THE FLSA

80.    Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

81.    Defendant's practice of failing to pay Plaintiffs and the FLSA Class Members time-and-one-half for all hours worked in excess of forty (40) per workweek violates the FLSA.  29 U.S.C. § 207.

82.    None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are paid are applicable to Defendant or Plaintiff/Class Members.

## COUNT TWO: FAILURE TO PAY OVERTIME UNDER KENTUCKY LAW

83.    Plaintiffs incorporate all allegations in the prior paragraphs.

84.    The conduct alleged in this Complaint violates Kentucky's wage and hour law ("KWHL"), KRS § 337.010 *et seq.*

85. At all relevant times, Defendant has been an "employer" within the meaning of the KWHL. KRS § 337.010.

86. At all relevant times, Defendant employed Plaintiffs and the Kentucky Class Members as "employees" within the meaning of the KWHL. KRS § 337.010.

87. The KWHL requires an employer like Defendant to pay overtime to all non-exempt employees. KRS § 337.285.

88. Plaintiffs and the Kentucky Class Members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked at a rate of no less than 1.5x their regular rates of pay. KRS § 337.285.

89. Within the applicable limitations period, Defenant had a policy and practice of failing to pay proper overtime to the Kentucky Class members for their hours worked in excess of 40 hours per week.

90. As a result of Defendant's failure to pay proper overtime to Plaintiffs and the Kentucky Class members for work performed in excess of 40 hours in a workweek, Defendant violated the KWHL.

91. Plaintiffs and the Kentucky Class Members are entitled to recover their unpaid wages, liquidated damages, attorneys' fees, costs, and all other legal and equitable relief provided under the KWHL. KRS § 337.385(1)-(2).

## JURY TRIAL DEMAND

92. Plaintiffs and Class Members hereby demand trial by jury on all issues.

## **PRAYER**

93.    For these reasons, Plaintiffs pray for:

a.    An order designating the FLSA Class as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to all FLSA Class Members;

b.    An order designating the Kentucky Class as a class action under Rule 23 of the Federal Rules of Civil Procedure;

c.    A judgment against Defendant awarding Plaintiffs and the Class Members all their unpaid overtime compensation and liquidated damages;

d.    An order awarding attorneys' fees, costs, and expenses;

e.    Pre- and post-judgment interest at the highest applicable rates; and

f.    Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Don J. Foty*
Don J. Foty
Foty Law Group, P.C.
DFoty@fotylawgroup.com
Texas State Bar No. 24050022
2 Greenway Plaza, Suite 250
Houston, TX 77046
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

AND

By:    */s/ Jennifer L McManus*
Jennifer L. McManus (965976)
Local Attorney for Plaintiff
25892 Woodward Avenue
Royal Oak, MI 48067-0910

20

(248) 542-6300
jmcmanus@faganlawpc.com

ATTORNEYS FOR PLAINTIFFS AND
CLASS MEMBERS